[No. 3453-1.    Division One.    December 28, 1976.]

ROBERT R. RAUSCHER, *Appellant*, v. KENNETH HALSTEAD, ET AL, *Respondents*.

*Sweet & Dussault, John W. Sweet,* and *James M. Neff,* for appellant.

*James Gooding,* for respondents.

SWANSON, J.—Robert A. Rauscher appeals from a judgment which apportioned the damages awarded to him for the illegal felling of trees on his property by the defendant Kenneth Halstead.

Rauscher owned an undeveloped lot located in Seattle upon which at least 32 trees were growing. Halstead resided on land immediately behind and above the Rauscher property. Some time in the latter part of April of 1973, Halstead cut two trees which were growing on the Rauscher property. The record reveals that Halstead assumed the trees were located on property owned by the city. However, the trial court specifically found that the trees were situated on the Rauscher lot and that Halstead cut them with knowledge of this fact. Subsequent to Halstead's cutting of the two trees, two young men entered the Rauscher property and proceeded to fell approximately 30 trees. These two men then invited Halstead to enter the property for the purpose of trimming the trees which they

had already cut down. Halstead accepted the invitation and assisted in trimming the felled trees.[1]

Upon learning of the tree cutting on his property, Rauscher brought suit against Halstead seeking damages under RCW 64.12.030.[2] The trial court, sitting without a jury, found that Halstead willfully trespassed upon Rauscher's property, but that he did not act as a joint tort-feasor in felling the trees. As a result, the trial court apportioned the damages holding Halstead liable for only one-sixteenth of the value of the entire damages caused.[3]

Rauscher assigns error to three of the trial court's findings of fact,[4] all of which form one essential issue: Whether

[1]Appellant contends that even if Halstead did not actually participate in the cutting of the 30 trees, his act of entering the Rauscher property and trimming the branches from trees already felled by the two young men amounted to a ratification of a trespass resulting in Halstead's liability for the entire damage. There is no merit to this contention. The rule upon which appellant relies, see 75 Am. Jur. 2d § 31 *Trespass* (1974), is to the effect that a person may become liable as a principal by ratifying or adopting a trespassory act committed for his benefit, even if he did not command the original trespass. In the instant case there is a lack of evidence on the subject of Halstead's supposed benefit. Moreover, the act of felling the trees had already taken place. Halstead merely assisted in trimming branches off trees which had already been cut down. Further, RCW 64.12.030, the statute upon which the suit is based, provides no relief for such trespass.

[2]RCW 64.12.030 provides in part:

"Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . without lawful authority, in an action by such person, . . . against the person committing such trespasses . . . , if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be."

[3]One-sixteenth represents the amount of damages caused by defendant when he cut two of the 32 trees which were actually destroyed. The record indicates that all the trees cut were approximately 20 feet high and 10 to 12 inches in diameter. The trial court made no effort to place an individual value for each tree cut, nor did the parties introduce such evidence.

[4]The three findings of fact assigned as error by appellant are as follows:

"During the latter part of March and first part of April, 1973, the defendant, Kenneth Halstead, entered upon plaintiff's property knowing it was not his property and cut two trees, one a maple and the other a cedar which trees were each 10″ to 12″ in diameter. Two young men,

the trial court erred in failing to find that Halstead acted as a joint tort-feasor.

Our court has tacitly recognized the California formula for constituting joint tort-feasors. Under this formula, the following three elements must all exist: (1) a concert of action, (2) a unity of purpose or design, (3) two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others. *Litts v. Pierce County*, 5 Wn. App. 531, 536 n.1, 488 P.2d 785 (1971), quoting from *Alexander v. Hammarberg*, 103 Cal. App. 2d 872, 230 P.2d 399 (1951). Generally speaking, a "joint tort" occurs only where the behavior of two or more tort-feasors is such as to make it proper to treat the conduct of each as the conduct of the others as well. The common plan or concert of action cases are the most relevant illustrations of joint torts. *See Michigan Millers Mut. Fire Ins. Co. v. Oregon-Washington R. & Nav. Co.*, 32 Wn.2d 256, 201 P.2d 207 (1948). However, there may be certain situations where a concert of action is absent but where a single *indivisible* harm is sustained as a result of an independent, separate, but concurring tortious act of two or more persons. Courts in this situation have imposed joint and several liability for the damage caused by such wrongs. *See Wymer v. Dedman*, 233 Ark. 854, 350 S.W.2d 169 (1961); *see also* 74 Am. Jur. 2d *Torts* § 61 (1974). The

whose identity is not known, cut approximately thirty trees from the property belonging to the plaintiff. Chain saw noise was heard by various residents in the area during the removal of the trees. In all, thirty-two trees were cut." Finding of fact No. 5.

"Prior to the cutting of trees, the plaintiff's tract had market value of $12,000. The trees added aesthetic value to the land and made the tract a desirable residential building site. After the thirty-two trees were cut, the land had market value of $7,500. Thus the diminution of value by reason of the felling of all thirty-two trees was $4,500. However, the defendant had cut only two trees and his share of the damage done was two thirty-seconds; i.e., 1/16 of $4,500 or a total monetary damage of $281.25." Finding of fact No. 6.

"The defendant did wilfully trespass, falling [*sic*] two trees on plaintiff's property without reasonable cause to believe he was lawfully authorized so to do." Finding of fact No. 7.

important element here is that the harm is incapable of apportionment.[5]

■ If, perchance, the harm occasioned is capable of apportionment or if the independent concurring acts have caused distinct and separate injuries to the plaintiff, courts of this state as well as others have not found the tort-feasors jointly and severally liable, *Fugere v. Pierce*, 5 Wn. App. 592, 490 P.2d 132 (1971); *see also Maddux v. Donaldson*, 362 Mich. 425, 108 N.W.2d 33, 100 A.L.R.2d 1 (1961); *Hill v. Macomber*, 103 N.J. Super. 127, 246 A.2d 731 (1968); 1 F. Harper & F. James, *The Law of Torts* 694 (1956), and the collected cases in 74 Am. Jur. 2d *Torts* § 63 (1974); 35 A.L.R. 409 (1925); 91 A.L.R. 759 (1934), but, rather have held each individual tort-feasor liable only for the damage created by him.

In the instant case we are not faced with a situation where the injury occurring is incapable of distinct calculation such as in the many successive auto collision cases brought before the courts. Rather, the injury caused by Mr. Halstead was capable of apportionment in that each tree cut represented a distinct harm or injury. As such, we cannot say that the trial court erred in finding Halstead an independent tort-feasor. *Fugere v. Pierce, supra.*

Judgment affirmed.

FARRIS and CALLOW, JJ., concur.

---

[5]The court in *Madigan v. Teague*, 55 Wn.2d 498, 502 n.2, 348 P.2d 403 (1960), without expressly adopting, recognized the rule imposing joint and several liability when plaintiff's evidence tends to show that it is impossible to segregate the damage caused by independent tort-feasors, but giving the latter the opportunity to apportion the damage if they can. *See Summers v. Tice*, 33 Cal. 2d 80, 199 P.2d 1, 5 A.L.R.2d 91 (1948).