[No. 7861-5-I. Division One. December 22, 1980.]

HAYDN P. PHENNAH, ET AL, *Appellants,* v. DANIEL S. WHALEN, ET AL, *Respondents.*

---

20

*Clinton, Fleck, Glein & Brown* and *Richard J. Glein,* for appellants.

*Lycette, Diamond & Sylvester, Richard M. Foreman, Helsell, Fetterman, Martin, Todd & Hokanson, Donald C. Harrison, Murray, Dunham, Waitt,* and *Matt Murray,* for respondents.

RINGOLD, J.—The plaintiffs, Haydn P. Phennah and Dorothy E. Phennah, appeal the dismissal of this cause on a challenge to the sufficiency of their evidence at the close of the defendants' case. The dispositive question presented for our consideration is whether the defendants are entitled to a dismissal when the plaintiffs fail to proffer an evidentiary basis for the segregation of damages among successive tort–feasors. We answer in 'the negative and therefore reverse the judgment of the trial court dismissing this action.

Dorothy E. Phennah, a woman in her mid–sixties with a preexisting osteoarthritic condition, claims to have been injured in two unrelated automobile accidents, the first on January 14, 1976, and the other on April 8, 1976. For some 14 years before the first accident Phennah had been seeing Dr. Scott Wisner, who treated her for her osteoarthritic condition, which produced muscle spasms and mild strains whenever she overexerted herself. Dr. Wisner saw Phennah for treatment on January 12. Two days later Phennah was a passenger in a Metro bus driven by defendant Lorenzo. While stopped on the roadway the bus was struck from the

rear by a Volkswagen driven by defendant Whalen. Testimony of various passengers and the driver Lorenzo was that the impact produced a jolt. The Volkswagen was a total loss and the bus required a new bumper. Phennah saw Dr. Wisner on January 22. He testified that her earlier symptoms had been in her lower back, but now she was complaining of neck and upper back pain. Dr. Wisner concluded that her new symptoms and an aggravation of her preexisting condition were caused by the January 14 accident.

On April 8, 1976, Phennah was driving north in Seattle when her vehicle was struck in the intersection by a vehicle driven east by defendant McHugh. Phennah visited Dr. Wisner on April 9 complaining of a general worsening of her condition. The doctor found that she had a restriction of movement in her back, legs, hips, neck, shoulder, and low back and muscle spasms in her back and neck. Dr. Wisner testified that her symptoms after the April 8 accident were worse than before and "I think her condition is permanent." Dr. Wisner further testified that while neither accident caused Phennah's arthritic condition, each affected the severity and permanence of her disability and that it is impossible to state which accident caused what degree of injury and permanence. From the testimony of two other medical experts and of Phennah a reasonable inference can be drawn that she sustained injuries as a result of each accident, but the testimony provided no basis for segregating the damages among causes.

In the first accident Phennah claimed that Lorenzo was negligent for stopping the bus in the roadway to discharge passengers, and that Whalen was negligent when he collided with the rear of the bus. She also sued McHugh who was the disfavored driver in the second accident. McHugh asserted an affirmative defense that Phennah was contributorially negligent. All the defendants joined in the motion to dismiss at the end of their evidence. The trial court granted the motion relying on the rule of *Smith v. Rodene*, 69 Wn.2d 482, 418 P.2d 741 (1966), that failure of the

plaintiff suing successive tort–feasors to proffer evidence on the basis of which the jury can segregate damages as among them is fatal to plaintiff's case.

## SCOPE OF APPEAL

In ruling on a motion to dismiss for insufficiency of evidence either the trial court or the appellate court must accept as true the nonmoving party's evidence and draw all favorable inferences that may reasonably be evinced. RCW 4.56.150; *Rosendahl v. Lesourd Methodist Church,* 68 Wn.2d 180, 412 P.2d 109 (1966); *Moyer v. Clark,* 75 Wn.2d 800, 454 P.2d 374 (1969). The motion may be granted only if it can properly be said as a matter of law that there is no evidence or reasonable inference therefrom to sustain a verdict for the nonmoving party. *Miller v. Payless Drug Stores of Wash., Inc.,* 61 Wn.2d 651, 379 P.2d 932 (1963). For purposes of the present case, then, we accept as established the defendants' negligence. Phennah does not dispute her preexisting condition, so that fact is established. Since defendant McHugh has the burden of proving Phennah's contributory negligence, an affirmative defense, *Godfrey v. State,* 84 Wn.2d 959, 530 P.2d 630 (1975), the inference must be drawn against defendants and the defense deemed unproved. Thus, that question need not be considered.

## CHARACTERIZATION OF THE TORT–FEASORS

The difficulty which confronts us is that the right to recovery under our cases is often confused and dependent on the characterization of the tort–feasor as joint, concurrent or successive. In *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 235, 588 P.2d 1308 (1978) (Seattle–First), the Supreme Court classifies multiple tort–feasors into three categories:

> Multiple tort–feasors are often characterized as "joint", "concurrent", or "successive" when differentiating between the *type of harm* caused and the *nature of the duty owed.* Joint tort–feasors are those who have acted in common or who have breached a joint duty. . . .

Concurrent tort–feasors are those whose independent acts concur to produce the injury. . . . Significantly, the *harm* caused by both joint and concurrent tort–feasors is *indivisible*. The distinguishing factor between these types of tort–feasors is the duty breached. Joint tort–feasors breach a joint duty whereas concurrent tort–feasors breach separate duties.[3]

[3]The concept of "successive" tort–feasors applies when none of the multiple tort–feasors could have caused the whole harm suffered and where the harm caused is clearly divisible. *See Smith v. Rodene,* 69 Wn.2d 482, 418 P.2d 741 (1966); *DeNike v. Mowery,* 69 Wn.2d 357, 418 P.2d 1010 (1966); *Snavely v. Goldendale,* 10 Wn.2d 453, 117 P.2d 221 (1941). *See also* 2 Restatement (Second) of Torts § 433(A) (1965). The concept will not be discussed further because it has not been raised in the instant case.

Pointing out that here there was an indivisible harm produced, Phennah argues that the tort–feasors are concurrent, so that joint and several liability must be imposed. Contending that there was no concurrence of independent acts, the defendants urge that the tort–feasors are successive tort–feasors, such that only several liability can be imposed. The difficulty in resolving this question is that the definitions of the three classes are not strictly followed in the cases.

Despite the wording of the definitions in *Seattle–First* which gives rise to Phennah's argument, a review of the cases indicates that our courts have looked not to the divisibility of the harm, but to the manner in which the occurrence(s) took place in determining whether tort–feasors are joint, concurrent or successive. We therefore do not read *Seattle–First* to mean that the characterization of the tort–feasors must turn on the divisibility of the harm. Defendants who were acting together, so as to share a common duty, are joint tort–feasors. *Michigan Millers Mut. Fire Ins. Co. v. Oregon–Washington R.R. & Navigation Co.,* 32 Wn.2d 256, 264, 201 P.2d 207 (1948); *White Pass Co. v. St. John,* 71 Wn.2d 156, 158, 427 P.2d 398 (1967). Characterized as concurrent tort–feasors have been those defendants, one of whose negligence set in motion a series of

events upon which the other's acted so as to produce the end result. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra; cf. Doyle v. Nor–West Pac. Co.,* 23 Wn. App. 1, 594 P.2d 938 (1979); *Hufford v. Cicovich,* 47 Wn.2d 905, 290 P.2d 709 (1955). The final category is successive tort–feasors, whose negligent acts are wholly unrelated in time and causation. *Fugere v. Pierce,* 5 Wn. App. 592, 490 P.2d 132 (1971); *Smith v. Rodene, supra* at 485; *Young v. Dille,* 127 Wash. 398, 220 P. 782 (1923). Here the two accidents occurred entirely independently, separated by some 3 months, and the tort–feasors are therefore successive tort–feasors.

Yet despite the independence of the two occurrences, only one harm was produced. This indivisible harm produced by wholly unrelated negligent acts illustrates the anomaly in the law. To cure this problem we believe that the determinative issue here must not be the characterization of the tort–feasors, but upon whom the burden of segregating damages should be placed.

### Burden of Proof

In the instances of joint or concurrent tort–feasors it is intuitively clear that there can result only one injury. In the case of successive tort–feasors, however, the injuries are inflicted by separate, discrete impacts and it therefore would seem that the plaintiff ought to be able to ascribe to each wrongdoer responsibility for only the damage he caused. A leading authority, 1 F. Harper & F. James, *Torts* § 10.1, at 707–08 (1956), points out that in this situation, rather than the characterization of the tort–feasors

> the major problem is the divisibility of the harm. In these cases, . . . the harm is at least theoretically divisible. . . . But clearly theoretical divisibility of harm will not help the plaintiff if the courts require him to show first that each of the defendants contributed [to the harm] and second the exact proportion of the harm caused by each defendant.

The rule for holding each defendant jointly and severally liable in these situations has been put rather well in

the earlier cases of several jurisdictions and in some more recent decisions elsewhere. These cases emphasize that the burden of apportioning damages, if possible, more properly should be placed on the multiple defendants who have been sued for injuries resulting from their . . . [successive] negligence, under circumstances in which it is not alleged that any one defendant was responsible for the entire injury or any specified part of it.

(Footnotes omitted.) The development of Washington law, with the detour of *Smith v. Rodene, supra,* which is distinguishable, indicates a trend toward the adoption of such a rule.

In *Hufford v. Cicovich, supra,* the Supreme Court in the course of distinguishing that case from one in which there are multiple tort–feasors cited *Summers v. Tice,* 33 Cal. 2d 80, 199 P.2d 1, 5 A.L.R.2d 91 (1948), as authority for the law to be applied in the latter situation. *Summers* stands squarely for the proposition that "[i]f defendants are independent tort feasors and thus each liable for the damage caused by him alone, and, at least, where the matter of apportionment is incapable of proof, the innocent wronged party should not be deprived of his right to redress." *Summers,* 33 Cal. 2d at 88, 199 P.2d at 5. Then followed *Madigan v. Teague,* 55 Wn.2d 498, 502 n.2, 348 P.2d 403 (1960), where the court stated:

There is language in *Hufford v. Cicovich,* 47 Wn. (2d) 905, 290 P. (2d) 709, which suggests that this court would be inclined to adopt the California rule of *Summers v. Tice,* . . . imposing joint and several liability when plaintiff's evidence tends to show that it is impossible to segregate the damage caused by independent tort–feasors, but giving the latter the opportunity to apportion the damage if they can.

Next in time is *Smith v. Rodene, supra,* in which one assignment of error challenged an instruction putting onto the defendants the burden of segregating damages. The Supreme Court pointed out that:

The instant case was tried upon the theory that there were two separate torts. . . . The liability of each defendant being several, and not joint, the burden is on

the plaintiff . . . to prove the amount of damages attributable to each collision.

*Smith,* at 485. The court cited *Maas v. Perkins,* 42 Wn.2d 38, 253 P.2d 427 (1953), a case in which the plaintiff made "no contention that respondents [defendants] were jointly liable for all of the damage." *Maas v. Perkins; supra* at 43. The *Maas* court sustained the trial court's dismissal of the damage feature of the case. In *Scott v. Rainbow Ambulance Serv., Inc.,* 75 Wn.2d 494, 452 P.2d 220 (1969), the Supreme Court upheld the trial court's dismissal upon plaintiff's opening statement because she admitted that no effort would be made to segregate her damages as between her own negligence and that of the defendant. There the court stated:

> When . . . plaintiff is clearly one of the two persons responsible for the injury involved, and plaintiff makes no attempt to segregate those damages, we find no over–riding reason in justice for shifting that burden of proof to the defendants.

*Scott,* at 498.

In *Fugere v. Pierce, supra,* the court relied upon the Restatement (Second) of Torts for the proposition that defendants should have the burden of proving allocation of damages among themselves. The court reviewed the testimony and concluded that there was no substantial evidence that the harm was divisible and granted a new trial because the jury had been instructed to apportion damages among the defendants. The *Fugere* court distinguished *Smith v. Rodene, supra,* on the basis that the accidents there were separated by more time. *Fugere,* at 597. In *Rauscher v. Halstead,* 16 Wn. App. 599, 557 P.2d 1324 (1976), this court observed that there may be situations in which successive tort–feasors may be jointly and severally liable. The court said "The important element here is that the harm is incapable of apportionment." *Rauscher,* at 601–02.

The emerging rule from this line of cases is that when the harm is indivisible as among successive tort–feasors, the defendants must bear the burden of proving allocation of

the damages among themselves. *Smith v. Rodene, supra,* is distinguishable not so much on the basis of the amount of time between the impacts,[1] as because the court began on the premise of several liability, as noted above.[2] The irreconcilable conflict between instructions, one imposing the burden of proof regarding allocation of damages on the plaintiff, and the other, on the defendants, was but one of several grounds requiring reversal. No one argued for joint liability in *Maas v. Perkins, supra,* and it is similarly distinguishable. *Scott v. Rainbow Ambulance Serv., Inc., supra,* is also distinguishable on the basis that it involved allocation of damages between a plaintiff with a previous injury and a negligent defendant, rather than allocation among negligent defendants. The policy factors involved in *Scott* which justified dismissal of plaintiff's cause are quite different from those at play when the question is allocation of damages among several negligent tort–feasors—*viz.* that "As between the proved tortfeasor who has clearly caused some harm, and the entirely innocent plaintiff, any hardship due to lack of evidence as to the extent of the harm caused should fall upon the former." Restatement (Second) of Torts § 433B, comment *d* (1965). The cases in which the plaintiff's inability to segregate damages as among causes was fatal to his case are all distinguishable.

We agree with *Fugere v. Pierce, supra,* that the Restatement (Second) approach is applicable. Restatement (Second) of Torts § 433A states:

---

[1] "The acts [of negligence by successive tort–feasors] have no relation to each other except nearness in time. But time is not a determinative consideration. If the acts are not joint in fact, or, if the acts do not unite in causing a single injury, they are as widely separated in law by the lapse of moments as they would be were they separated by the lapse of hours or days." *Young v. Dille,* 127 Wash. 398, 404, 220 P. 782 (1923).

[2] Further, a study of briefs in *Smith v. Rodene,* 69 Wn.2d 482, 418 P.2d 741 (1966), reflects that there was an evidentiary basis for segregating damages. The jury in fact segregated the damages between occurrences; no issue was raised whether joint liability should be imposed. Even though conflicting instructions constitute error per se, we fail to see how any prejudice to the defendants resulted therefrom in *Smith.*

(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

Section 879 provides:

If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive.

Section 881 provides:

If two or more persons, acting independently, tortiously cause distinct harms or a single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused.

Thus, according to the Restatement (Second) approach, the first determination is whether the harm is segregable. On the basis of that factual determination, the tort–feasors are either severally or jointly liable. As to the burden of proof when the harm is not segregable section 433B allocates to the tort–feasors the burden of proving apportionment among them. Section 433B(2) provides:

Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

While the use of the term "has combined to bring about harm to the plaintiff" suggests that this section applies only to concurrent tort–feasors, whose conduct has conjoined into a concert of action producing one harm, illustration 8 of section 433B of the Restatement (Second) of Torts outlines a multiple automobile collision situation in which the negligent acts are independent. This section applies to successive tort–feasors as well as to concurrent tort–feasors.

We therefore hold that once a plaintiff has proved that each successive negligent defendant has caused some damage, the burden of proving allocation of those damages among themselves is upon the defendants; if the jury find that the harm is indivisible, then the defendants are jointly and severally liable for the entire harm.

For the above reasons, we reverse and remand for new trial.

CALLOW, C.J., and PEARSON, J., concur.

Reconsideration denied February 4 and April 30, 1981.

Review denied by Supreme Court June 26, 1981.